

# THE ATTORNEY GENERAL
# OF TEXAS
### AUSTIN, TEXAS

Gerald C. Mann

Honorable J. T. McMillin
Deputy Commissioner
Department of Banking
Austin, Texas

Dear Sir:   Opinion No. 0-1938
      Re: State banks - Incorporation
        - Fees for amendment of char-
        ter - Delinquent fees -
        Collection by the present
        Commissioner

  We acknowledge receipt of the following re-
quest for an opinion, to-wit:

  "This is to acknowledge the receipt
of your opinion in which you construe the
provisions of Article 3921 of the Revised
Statutes, relative to fees charged in con-
nection with the characters of banks and
banks and trust companies.

  "Under that opinion a fee of $50.00
is collectible with any amendment. In
addition to this fee, if the amendment in-
cludes an increase of capital stock in ex-
cess of $10,000.00 then a fee of $10.00
per $10,000.00 for each $10,000.00 in ex-
cess of the first 1$ collectible.

  "This Department has been, for a num-
ber of years, operating under an erroneous
construction of Article 3921. It has in the
past collected only $50.00 in connection
with any amendment irrespective of whether
the amendment increased the capital stock
or not. Obviously it is the duty of the

present Commissioner to collect this de-
ficiency of fees in so far as it was incurred
during his administration.

"It has occurred to me, however, that
it might possibly be my duty to have the
books of this Department audited and to col-
lect the deficiency in fees which arose
during past administrations. This obvious-
ly would entail considerable expense, and
before undertaking such an operation I
would like to respectfully submit the fol-
lowing questions:

"1. Being aware that, during past ad-
ministrations, the several banking commis-
sioners operating under an erroneous con-
struction of Article 3921 have failed to
collect the full fees due the State in con-
nection with the amendment of bank charters
and the amendment of charters to bank and
trust companies. Is it my duty, as the
present incumbent, to have the books of
this Department audited for the purpose of
determining the deficiency and the corpora-
tions from whom fees are due, and to proceed
to collect those fees?

"2. In a number of instances the banks
in question, after increasing their capital,
have nationalized. Would this fact in any-
wise affect by duty or the liability of the
respective corporations to pay the fees in
question?

"3. Subsequent to the increase in
capital some of these corporations have
become insolvent and/or either, are now in
the process of liquidation, or have been
completely liquidated. Is it my duty to
attempt to collect the fees in question
from the insolvent banks, if the same is in
the court of liquidation, or from the stock-
holders if the bank is completely liquidated?
Failing to collect, is it my duty to pursue
the bond of the Commissioner under whose ad-
ministration the shortage arose?"

We have carefully considered your questions and beg to answer them as follows:

1. By the terms of Article 3921 of the Revised Civil Statutes, it is made the duty of the Banking Commissioner to charge and receive for the use of the State certain charter and charter amendments fee, as therein set out. It is the duty of the Banking Commissioner to collect all fees properly chargeable under this article of the statutes, whether such fees accrued under his administration or that of a predecessor. It can make no difference whether the delinquency was due to oversight, misconstruction of the law, or other cause whatsoever. The law fixes the amount of such fees and it is not within the scope of the Commissioner's power to remit the same, or any part thereof. What he cannot do directly he cannot do indirectly, as by mere failure for any reason to collect the proper fees. It will be seen that these fees are collectible by the Banking Commissioner, but they are for the use of the State. So that, no period of limitation will bar the State's right to collect delinquent fees, or fees not paid through oversight or mistake. Of course, the Banking Commissioner is clothed with the power to make such collections.

Your first question, therefore, is answered to the effect that it is the duty of the present Banking Commissioner to ascertain from the books of your department the respective deficiencies, and the amounts thereof, due by State banks, whose charters have been amended in accordance with the statutes, whether such fees accrued under your own administration or another.

2. Where a State bank shown by your books to be indebted to the State for charter of charter-amendment fees has nationalized, the dissolving corporation would, of course, be liable for such unpaid fees, and the National bank taking over its affairs might or might not itself be liable, according to the terms of the contract of take-over. In other words, a National Bank taking over the affairs of a State bank would become individually liable only for such debts of the retiring State bank as it assumed to pay but none other.

3. Where a bank shown by your books to be delinquent with respect to charter or amendment of charter fees is in process of liquidation, you, as liquidator of such bank, should list and approve as a claim on behalf of the State of Texas the amount of such delinquent fees, same to be paid out of the assets of the bank as a general unpreferred claim. If the liquidation has been finally closed without the allowance of such a claim, it would appear to be lost to the State. Article 465 of the Revised Civil Statutes of Texas, authorizing and requiring the deposit in trust by the Banking Commissioner of a sum sufficient to pay the unclaimed dividends and depositors of a failed bank is not broad enough to cover such an item. Such unpaid fees due to the State do not constitute a dividend or deposit, within the meaning of that statute. Furthermore, if the liquidation has been closed, and the Banking Commissioner has been discharged, then he no longer has any official duty or authority with respect to such liquidated bank or its affairs. As Banking Commissioner, he is a stranger to the whole matter.

It is not the duty of yourself, as Banking Commissioner, in any event to undertake the collection of such delinquent fees upon the bond of a predecessor of yours, under whose administration the delinquency may have arisen. The Banking Commissioner's official bond runs to the State to be approved by the Governor, (Rev. Civ. Stat. Art. 344), and successor Commissioners. and therefore, are not authorized to institute suit upon such a bond, for any breach of duty whatsoever of a former Commissioner.

Upon another reading of our opinion No. O-1841, we desire to discuss further the question there under consideration.

From the opinion of Chief Justice Gaines in St. Louis S.W. Ry. Co. vs. Tod, 64 S.W. 778, we quote excerpts as follows:

(at page 778-779 )

". . . . The determination of the case depends upon the construction of so

much of article 2439 of the Revised Statutes
as prescribes the fees to be charged by
the secretary of state for filing charters
or railroad corporations and amendments
thereto. That part of the article reads
as follows: 'Art. 2439. The secretary of
state, besides other fees that may be pre-
scribed by law, in authorized and required
to charge for the use of the state the fol-
lowing fees: For each and every charter
amendment or supplement thereto of a pri-
vate corporation created for the purpose
of operating or constructing a railroad,
magnetic telegraph line, or street railway,
or express company, authorized or required
by law to be recorded in said department, a
fee of one hundred dollars, to be paid when
said charter is filed; provided, that if
the authorized capital stock of said cor-
poration shall exceed one hundred thousand
dollars, it shall be required to pay an ad-
ditional fee of twenty-five dollars for
each one hundred thousand dollars author-
ized capital stock or fractional part there-
of, after the first.'. . . "

(at page 779)

". . . On the other hand, it is but
just and equitable, whenever a corporation
organized for profit tenders an amendment
which increases its capital stock, that it
should pay the additional tax for such in-
crease, just as if it had filed an original
charter with the same amount of capital
stock as the increase. . ."

". . . The reasonable and equitable
rule upon the filing of an amendment is
to charge for the amendment the fixed fee
as for an original charter; and, in case
the amendment adds to the capital stock

of the corporation, to charge the same additional fee for such increment as would be charged for an original charter with a capital stock of that amount. This is our construction of what the legislature intended by the statute in question, and it is inconsistent with its terms. . ."

(at page 779-780)

". . . . We conclude that the only reasonable construction of the statute in question is that when an amendment to a charter is filed, if there be an increase of the capital stock by an amount over $100,000, then the additional fee is chargeable upon the excess of such increase over the amount named, but that, if the amendment does not authorize an increase of stock, then the fixed fee of $100 only should be charged for its filing."

At the time the above case was decided, the statute therein involved applied also to state banks and the filing fees for such banking corporations were paid to the Secretary of State. However, in 1917 the Legislature provided that amendments to bank charters should be filed with the Banking Commissioner and that he should charge the same fees as were then charged by the Secretary of State. Ch. 205, p. 469, General Laws, 35th Leg. Thereupon, in the 1925 codification, Article 3921 appeared, reading in part as follows:

"The Banking Commissioner shall charge. and receive for the use of the State the following fees:

". . . .

"For each charter, amendment or supplement thereto, of a bank or bank and trust company, a fee of fifty dollars shall be paid when said charter is filed, and if the

authorized capital stock of such corpora-
tion exceeds ten thousand dollars, it
shall be required to pay an additional
fee of ten dollars for each additional
ten thousand dollars of its authorized
capital stock or fractional part thereof
after the first, provided such fee shall
not exceed twenty-five hundred dollars."

It is readily seen that the present Article
3921 is practically identical with the statute under
consideration in the Tod case, supra. We advert to
a discussion of Judge Gaines' language in that case.
He says that "it is but just and equitable, whenever
a corporation. . . tenders an amendment which in -
creases its capital stock, that it should pay an ad-
ditional tax for such increase, just as if it had
filed an original charter with the same amount of
capital as the increase." Compare an original
charter for a corporation having a capital stock
of $50,000.00 with an amendment increasing the
capital stock of another corporation by the sum
of $50,000.00. Judge Gaines plainly says that the
fee for filing the amendment of the one corpora-
tion should be the same as the fee for filing the
original charter of the other. For filing the original
charter the fee would be $90.00 · The fee for filing
the amendment would be the same amount if we are to
regard his language. Further on he says that "The
reasonable and equitable rule upon the filing of an
amendment is to charge for the amendment the fixed
fee as for an original charter; and, in case the
amendment adds to the capital stock of the corpora-
tion, to charge the same additional fee for such
increment as would be charged for an original charter
with a capital stock of that amount.". The words
"that amount" have reference to the amount of the
increment. For the filing of a charter the fee of
$10.00 per $10,000.00 is not laid upon the first
$10,000.00. If the fee for an amendment includes
$10.00 for the first $10,000.00 of the increase,
then the same fee is not being charged for the fil-
ing of the amendment as would be charged for the fil-
ing of an original charter with a capital

the same amount as the increment. A larger fee is being charged.

The statute says that "For each charter, amendment or supplement thereto, of a bank or bank and trust company, a fee of fifty dollars shall be paid when said Charter is filed, "etc. Quite evidently, for the State to be entitled to the fifty-dollar fee for the filing of the amendment, the word "charter" as underlined in the quotation must be given the meaning "charter, amendment or supplement." We think this necessarily calls for the term "authorized capital stock" as thereafter used in the statute to mean "authorized increase of capital stock" in case of amendments. And such we think was the holding of Judge Gaines.

Practically an identical statute governs the fees collected by the Secretary of State from private corporations created for profit. Art. 3914, Civil Statutes. Our construction of Art. 3921 is in accord with the opinion of Assistant Attorney General E.F. Smith to S. L. Staples, Secretary of State, dated August 23, 1921, pertaining to Art. 3914. From that opinion we quote:

"Your are therefore advised that the filing fee paid by a foreign corporation does not entitle the corporation to file an amended charter increasing its capital stock without paying fifty dollars for the first ten thousand dollars of such increase and ten dollars for each additional ten thousand dollars of such increase 'provided that in no event shall such fee exceed the sum of twenty-five hundred dollars.'"

Attorney General Pollard took the same position in his brief filed in the case of General Motors Acceptance Corporation vs. McCallum, in the Supreme Court. However, that case was decided without reaching this point. 10 S.W. (2d) 687. It is our understanding

Honorable J. T. McMillin, page 9

that the construction placed on Art. 3921 has varied from time to time in the Banking Department. We also understand, however, that the departmental practice in the Secretary of State's office, with reference to Arti 3914, has been uniform in accordance with this and Mr. Smith's opinion and for an extended period of years. We should not like to attempt to reverse that construction and practice, particularly when founded upon an opinion from the Attorney General's Department, without being at least fairly well convinced that it is wrong.

Our opinion No. 0-1841 is modified accordingly, and you are advised that the fee for filing an amendment increasing the capital stock should be $50.00, plus $10.00 for each $10,000.00 (or fractional part thereof) of the increase after the first $10,000.00.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Glenn R. Lewis

Glenn R. Lewis
Assistant

GRL:IW

APPROVED MAY 1, 1940

ATTORNEY GENERAL OF TEXAS


APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN